## BYRON et al. v. UTAH COPPER CO.

No. 3240.  Decided Dec. 28, 1918.  (178 Pac. 53.)

1. APPEAL AND ERROR—MATTERS REVIEWABLE—RECORD.  Where an appeal is taken upon the judgment roll, and there is no bill of exceptions, the only matter to be considered is whether or not decree is supported by pleadings, findings of fact, and conclusions of law that conform with law.  (Page 157.)

2. APPEAL AND ERROR—MATTERS REVIEWABLE—RECORD—EVIDENCE.  Where an appeal is taken upon the judgment roll, and there is no bill of exceptions, it must be assumed that the findings of fact are true and supported by the evidence.[1]  (Page 157.)

3. MINES AND MINERALS—"MINING OPERATIONS."  Where a deed reserved the ores in and under the surface, and the right to carry on mining operations, the court cannot, say, as a matter of law, that the words "mining operations" was confined to subterranean mining or operations beneath the surface.[2]  (Page 158.)

Appeal from the District Court of Salt Lake County, Third District; *Hon. Geo. F. Goodwin,* Judge.

Action by F. L. Byron and others against the Utah Copper Company, a corporation.

Judgment for plaintiffs.  Defendant appeals.

AFFIRMED.

*Dickson, Ellis & Lucas* for appellant.

*Willard Hanson* and *Shirley P. Jones* for respondents.

CORFMAN, J.

---

[1] *Hulse* v. *Swicegood,* 49 Utah, 89, 162 Pac. 89; *Swanson* v. *De Vine,* 49 Utah, 1, 170 Pac. 872; *Roberts* v. *Bertram,* 49 Utah, 280, 163 Pac. 787; *McGuire* v. *State Bank,* 49 Utah, 381, 164 Pac. 494.

[2] *Weight* v. *Bailey,* 45 Utah, 584, 147 Pac. 899; *Daly* v. *Old,* 35 Utah, 74, 99 Pac. 460, 28 L. R. A. (N. S.) 463; *Nephi Plaster Co.* v. *Juab County,* 33 Utah, 114, 93 Pac. 53, 14 L. R. A. (N. S.) 1043.

This is an action brought to determine the rights of the respective parties to land situate in West Mountain Mining District, Salt Lake County. The land involved consists of 3.45-acre tract owned by Stephen Hays (impleaded as a defendant), August 10, 1915, when he, by quitclaim deed containing certain reservations to himself, conveyed the same to George C. Earl, a defendant and the grantor of the appellant, Utah Copper Company, for whom he was acting, and to whom he on the same day conveyed by a like deed containing the same reservations. Thereafter, January 25, 1916, Hays gave to the respondents, F. L. Byron and Charles S. Austin, a written lease of his rights in the premises for a term of two years.

The controversy between the parties arises over the provisions of the deed from Hays to Earl, and the effect of the reservations made therein by Hays.

The case was tried to the court without a jury. From a judgment and decree in favor of the respondents an appeal is taken by appellant upon the judgment roll. No bill of exceptions was taken or filed. The trial court found:

"(1) That on the 10th day of August, 1915, the defendant Stephen Hays was, and for a long time prior thereto had been, the owner, in possession, and entitled to the possession, of the property situate in the West Mountain Mining District, county of Salt Lake, state of Utah, consisting of approximately 3.45 acres, described as follows: (Describing 3.45 acres, more or less.)

"(2) That on said 10th day of August, 1915, said defendant Stephen Hays, with his wife, by quitclaim deed conveyed to the defendant George C. Earl said property and premises above described, subject to the following reservations and provisions: That in and by said deed of conveyance said grantors expressly reserved to themselves, their heirs and assigns, the right to all ores in and underneath the surface area of the property so conveyed, together with the right to mine and remove the same, with the proviso that the mining operations should not endanger any building or buildings or improvements then or thereafter erected on the following described portion of the surface area of said property so con-

veyed, by reason of sinking or caving of the surface of said area caused by such mining operations, to-wit: (Describing a small area, rectangular in form, 236 feet in length, 100 feet in width, within the 3.45-acre tract.) That said grantors in and by said deed also reserved the right to use any wagon road which might be constructed in the future by said grantee over said property so conveyed.

"(3) That the grantee in said deed, the defendant George C. Earl, in obtaining and taking said deed, was acting for and on behalf of the defendant Utah Copper Company, and thereafter, and on the 10th day of August, 1915, conveyed said property to the defendant Utah Copper Company.

"(4) That at the time of the conveyance by the defendant Stephen Hays to the defendant George C. Earl, and for a long time prior thereto, the said premises conveyed as aforesaid were known to be valuable for the ores and metals therein contained, and particularly for copper ore; also known that ore of marketable and economic value had been found and was contained at many places in said premises so conveyed at and immediately underneath the surface area thereof; also known that mining operations had theretofore been carried on in said premises by employing surface as well as underground methods of mining; also known at the time said deed was made that in the vicinity of said premises so conveyed the method generally adopted for mining low-grade copper ore was by taking out and removing all the material from the surface downward, and shipping whatever thereof would justify shipping for the mineral contents therein contained; that said surface process of mining ore was, at the time of making of said deed, carried on successfully by the defendant Utah Copper Company at its mine in said mining district in close proximity to the premises conveyed by the defendant Stephen Hays to the defendant George C. Earl; that said surface method of mining was and is the practical and more economic method, and the only method by which the mining of ores such as exist at or immediately underneath the surface of the ground conveyed by Stephen Hays to George C. Earl can be successfully and profitably carried on.

"(5) That at the time said defendant Stephen Hays conveyed said premises to the defendant George C. Earl it was the intention of the parties to said deed, in respect to said reservation therein contained, that by said reservation the grantee therein, the defendant George C. Earl, thereby relinquished and waived any right whatsoever to subjacent support of the surface of said premises so conveyed in respect to any mining operations thereafter carried on by the grantor, said defendant Stephen Hays, his heirs and assigns, except only in respect to said portion thereof, being said rectangular strip of ground 236 feet in length by 100 feet in width, hereinbefore described, and included within the area conveyed as aforesaid.

"(6) That after the making of said conveyances the defendant Utah Copper Company excavated said rectangular strip aforesaid for the purpose of erecting buildings thereon, and removed the material so excavated to other portions of said premises so conveyed, making two dumps, and supported the same in part by cribbing, and used a portion of one dump to support a retaining wall constructed by it; that the quantity of material so removed was very great; that said material had economic and commercial value for the minerals therein contained, particularly copper; that when said rectangular strip had been excavated the defendant Utah Copper Company erected thereon a retaining wall, and constructed five substantial houses in a row, three of them being situate wholly within the boundaries of said rectangular strip, one partly within and partly without said strip, and one entirely off of said strip, and also continued said retaining wall on said premises so conveyed beyond the boundaries of said rectangular strip or building area.

"(7) That after said rectangular strip had been excavated and built upon by the defendant Utah Copper Company, and on the 25th day of January, 1916, the defendant Stephen Hays, by an instrument in writing, granted, demised, and let to the plaintiffs herein, for a term of years from said date, that certain mine and mining property, including all the premises conveyed by the said Stephen Hays to the said George C. Earl, upon the condition that in mining said prem-

ises the said lessees should not endanger any buildings on said premises or improvements thereon, and should in all respects abide by and conform to the restrictions upon said mine contained in said deed from said Stephen Hays to said George C. Earl; that in and by said lease said lessors, the plaintiffs herein, agreed, among other things, to commence work upon said mine, working the aforesaid premises steadily and continuously from the date of said lease, and to pay and deliver to said defendant Stephen Hays, lessor, as royalty, twenty per cent. of the net value of all ores extracted from said premises during the life of said lease.

"(8) That immediately after the making and execution of said lease the plaintiffs herein prepared for and undertook to carry on the business of mining in and underneath the surface of said demised premises, except only as to the portion thereon referred to herein as the rectangular strip or building area, and the other portions thereof upon which buildings had been erected at the time of the making of said lease; that in so doing they attempted to first remove, ship, and sell the ore contained in the material which had been removed by the defendant Utah Copper Company from said rectangular strip or building area, and deposited in dumps on other portions of said premises; that the dumps were supported by cribbing erected by the defendant Utah Copper Company; that it became necessary for plaintiffs to disturb such cribbing sufficiently to enable them to economically and properly remove the ore contained in said dumps; that while plaintiffs were so engaged, and during the month of February, 1916, the defendants Utah Copper Company, John Knudson, and George C. Earl, without the consent of the plaintiffs, wrongfully broke down, destroyed, and removed chutes and other property which the plaintiffs had constructed for the purpose of facilitating the mining operations to be carried on at said demised premises, and refused to permit the plaintiffs to remove any of the ore from said demised premises, or to disturb said cribbing, or to carry on any mining operations on said premises, and asserted and claimed that the plaintiffs had no right to mine or remove any ore from said premises or any part thereof or from said dumps.

"(9) That after the making of said lease to the plaintiffs, and after the commencement of this action, the defendant Utah Copper Company erected, off and to the south of said rectangular strip or building area, and upon the premises included in said deed to said defendant George C. Earl, and in said lease to said plaintiffs, a large and expensive building; that in close proximity to the surface area immediately underneath said building so erected there was and is ore and mineral in large quantities and of commercial value which could be mined and shipped at a profit.

"(10) That since the commencement of this action, and during the pendency thereof, the plaintiffs herein have respectively sold, transferred, and assigned their interest in said lease, and the same is now held by Earl Randall, trustee in trust for J. W. Rooklidge, C. H. Thompson, D. A. Bunker, and himself, who are now the legal and equitable owners of said lease.

"(11) That the impleaded defendant, Stephen Hays, is now, and ever since prior to the making of said deed and of said lease has been, the owner of all the ores and minerals in and underneath the surface area of the property and premises conveyed by him to the defendant George C. Earl, and has not sold nor conveyed his said estate, right, title, or interest therein or thereto, or otherwise disposed of the same, except under said lease to the plaintiffs herein."

The court, in substance and effect, concludes:

That the defendant Stephen Hays is the owner of all the ores in and underneath the surface area of the entire 3.45-acre tract, with the right to mine the same, subject to the lease made by him to the respondents.

"That the plaintiffs and defendant Stephen Hays are entitled to a permanent injunction enjoining and restraining the defendant Utah Copper Company, and its agents, servants, and employees, and all persons acting under it or them, from in any manner interfering with or molesting the plaintiffs, or their successors in interest, in said lease, from mining and removing the ores and minerals in and underneath the surface of said demised premises, including the ores contained in the dumps made by said defendant Utah Copper Com-

pany from material excavated and taken from said rectangular strip, except in so far as the mining of ore (other than the ore contained in said dumps) will endanger, by sinking or caving of the surface area, any buildings or improvements erected or hereafter erected upon the said rectangular strip hereinbefore described, or any other buildings or improvements that were erected upon said premises outside of said rectangular strip prior to January 26, 1916, the date of said lease.''

In substance, the trial court decreed that the defendant Hays is the owner of all the ores in and underneath the surface of the 3.45 acres, together with the right to mine and remove the ores therefrom without supporting the surface in its natural state, except as to the rectangular strip or portion thereof; that with respect to said strip no mining operations shall endanger buildings or improvements erected or to be erected thereon, by reason of the sinking or caving of its area caused by mining operations, nor shall Hays, or the respondents, wantonly or unnecessarily injure or damage any buildings or improvements erected thereon by the appellant, Utah Copper Company.

Some fifty errors are assigned by appellant as having been committed by the trial court.

By reason of the appeal having been taken upon the judgment roll, and no bill of exceptions having been taken or filed, we are limited in our review of the case. The only matters to be considered are as to whether or not the decree of the district court is supported by the pleadings, findings of fact, and conclusions of law as made by the court, and conform with law.

Counsel for appellant has prepared and submitted an elaborate argument and cited numerous authorities in support of appellant's contention as to the legal rights of appellant under the deed of conveyance from defendant Stephen Hays to George C. Earl, its grantor.

As pointed out, we are limited in our review of this case. The deed is not before us, and we are therefore precluded from passing upon and determining the questions thus raised by appellant.

We are of the opinion that the decree is amply supported by and conforms to the pleadings—the amended complaint of the plaintiffs and the answer of the defendant Stephen Hays. The findings of fact closely follow and conform to the allegations of the amended complaint. The judgment and decree is amply supported by the trial court's findings. We cannot do otherwise than assume that the findings are true and are supported by the evidence. *Hulse* v. *Swicegood,* 49 Utah, 89, 162 Pac. 89; *Swanson* v. *De Vine,* 49 Utah, 1, 170 Pac. 872; *Roberts* v. *Bertram,* 49 Utah, 280, 163 Pac. 787; *McGuire* v. *State Bank,* 49 Utah, 381, 164 Pac. 494.

As we view the case on appeal, the only question to be determined by this court is whether or not, as a matter of law, the decree of the district court is to be sustained.

The quitclaim deed from Stephen Hays to George C. Earl, appellant's grantor, contained these provisions:

"Said grantors hereby reserve to themselves, their heirs, successors, and assigns, the right to all ores in and underneath the surface area hereinbefore described, together with the right to mine and remove the same, provided said mining operations of said grantors shall not endanger any building or buildings or improvements now or hereafter erected on a portion of the surface, as hereinbefore described, by reason of sinking or caving of the surface of said area caused by said mining operations, said portion being described as follows, to-wit: (Describing strip 236 feet in length by 100 feet in width.)

"Said grantors also reserve the right to use any wagon road which may be constructed in the future by said grantees over the 3.45 acres of ground firstly described herein."

Counsel contend that under the deed the estate vests in the appellant as the grantee of Earl, and that it acquired the fee and has the right to build houses or make other improvements upon the land anywhere and everywhere as it sees fit; that the reservations made in the deed render the grant nugatory and void; citing 13 Cyc. 675; Brewster, Conveyancing, 126. Counsel also contend that the decree as rendered erroneously denies appellant not only the right of subjacent support for its buildings, etc., but also

denies the right of subjacent support for the soil in its natural state. Numerous authorities are cited in support of this contention, among them: *Weight* v. *Bailey,* 45 Utah, 584, 589, 147 Pac. 899; *Walsh* v. *Fuel Co.,* 91 Kan. 310, 137 Pac. 941, 50 L. R. A. (N. S.) 686; *Weaver* v. *Coal Co.,* 216 Pa. 195, 65 Atl. 545; *Coal Co.* v. *Kearney,* 114 Md. 496, 79 Atl. 1013; Costigan, Mining Law, pp. 504, 505; *Ericson* v. *Iron Co.,* 50 Mich. 604, 16 N. W. 161; *Williams* v. *Gibson,* 84 Ala. 228, 4 South. 350, 5 Am. St. Rep. 368; *Paull* v. *Coal Co.,* 44 Ind. App. 218, 88 N. E. 859.

While the great weight of authority seems to support the theory of appellant as to the construction ordinarily to be placed upon grants of real property, we are not prepared to say that the cases are applicable to the case at bar.

The evidence not being before us for review, we must presume that the trial court in construing the deed from Hays to Earl, placed itself in the situation of the parties at the time of the execution and delivery of the deed. It is apparent from the findings of the trial court that, in order to enable it to do so, testimony was received in that regard.

"In construing private conveyances it is apparent that each case must be decided upon the language of the grant or reservation, the surrounding circumstances, and the intention of the grantor, if it can be ascertained." L. Lindley, Mines (3d Ed.), section 93, p. 153.

If we understand appellant's contention, it is that the words "mining operations," as used in the reservation, is confined to subterranean mining or operations beneath the surface. Assuming, without deciding, that the language employed in the deed is susceptible of that meaning, standing alone, yet, in a proper case, the trial court may receive testimony to establish that the intention of the parties was otherwise. *Daly* v. *Old,* 35 Utah, 74, 99 Pac. 460, 28 L. R. A. (N. S.) 463; 27 Cyc. 685.

In the case of *Nephi Plaster Co.* v. *Juab County,* 33 Utah, 114, 93 Pac. 53, 14 L. R. A. (N. S.) 1043, where similar terms are construed, Mr. Justice Frick, speaking for this court, says:

"From an examination of a large number of cases we are convinced that the foregoing is a fair deduction of the law upon the subject as

declared by the modern decisions, both of England and this country. From the foregoing it thus seems clear to us that where we find the terms 'mines and minerals' used in grants or in reservations, in instruments of conveyance, in statutes or constitutions, under the modern construction the former is not limited to mere subterranean excavations or workings, nor is the latter limited to the metals or metalliferous deposits, whether contained in veins that have well-defined walls or in beds or deposits that are irregular and are found at or near the surface or otherwise.''

.We think that, necessarily, a distinction must be made as to the construction to be placed upon grants and reservations made in deeds of conveyance where mineral rights are involved, according to the nature of the deposits, the kind of minerals, and the position it occupies in the natural formation in which it is found.

In the case at bar the trial court found that the defendant Hays was the owner, subject to the lease of the plaintiffs, of ''all the ores and minerals in and underneath the surface'' of the area conveyed to Earl; that at the time of the conveyance it was known that the premises conveyed contained valuable ores and metals of marketable value; that theretofore mining operations in the locality where the property was situate were carried on by mining at the surface as well as by underground operations; that surface mining was the usual method employed by the appellant, Utah Copper Company, on property in close proximity to the premises conveyed. In short, the findings of the trial court clearly indicate that the court placed itself in the exact situation of the parties before the deed was executed and delivered. The findings are set forth in full; they, in fact, speak for themselves. Not being able to review the evidence, we are, therefore, powerless to say that the findings are not predicated on competent testimony.

The findings and conclusions support the judgment, and the same is, for the reasons stated, affirmed; respondents to recover costs.

FRICK, C. J., and THURMAN and GIDEON, JJ., concur.

McCARTY, J., died after the submission of this cause and before the filing of this opinion.